# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 05/26/2021 01:07:40 PM.
30-2021-01202793-CU-FR-CJC - ROA # 8 - DAVID H. YAMASAKI, Clerk of the Court By Savanah Trent, Deputy Clerk.

CM-010

| | | |
|---|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Paul Suppa, Esq 208014<br>ESTELLE & KENNEDY<br>367 N. 2nd Avenue<br>Upland, CA 91786<br>TELEPHONE NO.: (909) 608-0466 FAX NO.: (909) 608-0477<br>ATTORNEY FOR (Name): Justina Carrasco | | **FOR COURT USE ONLY** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 West Civic Center Drive
MAILING ADDRESS: Same as Above
CITY AND ZIP CODE: Santa Ana, California 92701
BRANCH NAME:

CASE NAME: Carrasco v. Robinhood Financial LLC

| CIVIL CASE COVER SHEET<br>[X] Unlimited ☐ Limited<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | Complex Case Designation<br>☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: 30-2021-01202793-CU-FR-CJC<br>JUDGE: Judge Glenn Salter<br>DEPT.: |
|---|---|---|

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- [X] Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties          d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel     e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve                 in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence              f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 5/25/21

Paul Suppa, Esq
(TYPE OR PRINT NAME)                                    ►                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]<br>CEB Essential Forms™<br>ceb.com | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

Justina Carrasco

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ORANGE**<br>STREET ADDRESS:  700 W. Civic Center DRIVE<br>MAILING ADDRESS:  700 W. Civic Center Drive<br>CITY AND ZIP CODE: Santa Ana 92701<br>BRANCH NAME:  Central Justice Center | **FOR COURT USE ONLY**<br>**FILED**<br>*SUPERIOR COURT OF CALIFORNIA*<br>*COUNTY OF ORANGE* |
| PLANTIFF: Justina Carrasco | **May 27, 2021** |
| DEFENDANT: Robinhood Financial LLC et.al. | Clerk of the Court<br>By: Katie Trent, Deputy |
| Short Title: CARRASCO VS. ROBINHOOD FINANCIAL LLC | |
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2021-01202793-CU-FR-CJC |

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>10/28/2021</u> at  <u>08:30:00 AM</u> in Department <u>C22</u> of this court, located at <u>Central Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html

**QUAN TRONG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giảI đáp những thắc mắc của quý vị.
Vấn Đề Dân Sư - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html

Clerk of the Court,  By: _Katie Trent_____ , Deputy

---

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Central Justice Center
700 W. Civic Center DRIVE
Santa Ana 92701

**SHORT TITLE:** CARRASCO VS. ROBINHOOD FINANCIAL LLC

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER: |
|---|---|
| | **30-2021-01202793-CU-FR-CJC** |

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Santa Ana, California, on 05/27/2021. Following standard court practice the mailing will occur at Sacramento, California on 05/28/2021.

Clerk of the Court, by: _Katie Trent_ , Deputy

ESTELLE & KENNEDY, A PROFESSIONAL LAW
CORPORATION
367 N 2ND AVENUE
UPLAND, CA 91786

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 2

V3 1013a (June 2004)

Code of Civil Procedure , § CCP1013(a)

Electronically Filed by Superior Court of California, County of Orange, 05/26/2021 01:07:40 PM.
30-2021-01202793-CU-FR-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Katie Trent, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ROBINHOOD FINANCIAL LLC, a Delaware Corporation; ROBINHOOD
SECURITIES, LLC., a Delaware Corporation; ROBINHOOD MARKETS, INC.,
a Delaware Corporation, and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JUSTINA CARRASCO

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER
*(Número del Caso):* 30-2021-01202793-CU-FR-CJC

Judge Glenn Salter

Central Justice Center
700 West Civic Center Drive
Santa Ana, California 92701

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul Suppa, Esq 208014 ESTELLE & KENNEDY
367 N. 2nd Avenue (909) 608-0466
Upland, CA 91786

DATE: 05/26/2021 DAVID H. YAMASAKI, Clerk of the Court          Clerk, by _Katie Trent_ , Deputy
*(Fecha)*                                                        *(Secretario)*                  *(Adjunto)*

Katie Trent

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB® Essential Forms
ceb.com

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

11

Justina Carrasco

ESTELLE & KENNEDY
A Professional Law Corporation
Michael L. Kennedy, Esq. SBN 269566
Paul A. Suppa, Esq. SBN 208014
367 N. 2nd Avenue
Upland, California 91786
Telephone: (909) 608-0466
Facsimile: (909) 608-0477
Email: paul@estellekennedylaw.com

Attorney for Plaintiff, JUSTINA
CARRASCO

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## CENTRAL JUSTICE CENTER

| | |
|---|---|
| JUSTINA CARRASCO, | CASE NO.: 30-2021-01202793-CU-FR-CJC |
| Plaintiff, | **COMPLAINT** |
| v. | 1. **Fraud/Concealment [see, e.g. California Civil Code §§ 1572, 1709, and 1710; and/or violation of 15 USC § 78i;** |
| ROBINHOOD FINANCIAL LLC, a Delaware corporation; ROBINHOOD SECURITIES, LLC., a Delaware corporation; ROBINHOOD MARKETS, INC., a Delaware corporation, and DOES 1 through 50, inclusive, | 2. **Fraud/Concealment [see, e.g. California Civil Code §§ 1572, 1709, and 1710] and/or violation of 18 USC § 1030 (a);** |
| Defendants. | 3. **Negligent Misrepresentation;** |
| | 4. **Business & Professions Code § 17200 et seq. [and/or Fraud/Concealment]; and,** |
| | 5. **Negligence.** |
| | **Assigned for All Purposes** |
| | Judge Glenn Salter |

Plaintiff JUSTINA CARRASCO (hereinafter "Plaintiff") hereby alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction and venue is proper in this Court because, among other things, this Court has subject-matter jurisdiction over this action pursuant to state and federal venue statutes. Also, the aggregate claims of Plaintiff are in excess of $126,500, exclusive of interest and costs. This

1

**COMPLAINT**

Court has personal jurisdiction over the Defendants, and/or because they are authorized to do business and do conduct business in California, and because Defendants have specifically marketed, advertised, and made substantial sales in California, and have sufficient minimum contacts with this state and/or sufficiently avail themselves of the markets of this state through promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## NATURE OF ACTION

2.      Robinhood (see definition of these entities, infra; collectively referred to as "Robinhood", infra) is an online brokerage firm that caters to young and inexperienced investors and investors who typically would not be well prepared to burden financial losses or market manipulations as ordinary or experienced investors.

3.      Robinhood purposefully, willfully, and knowingly manipulated the stock prices of Blackberry (NASDAQ: BB), AMC Theatres (NASDAQ: AMC), and Gamestop (NASDAQ: GME) and the ability to transact on its trading platform in the midst of an unprecedented stock rise and fall and trading behaviors occurring on January 28, 2021, resulting in the deprivation of its customers and users, retail investors, to invest and transact in an open-market free of manipulation.

## PARTIES

4.      Plaintiff JUSTINA CARRASCO ("Plaintiff") is a citizen of the state of California and resides in the County of Orange, at all times relevant. At all times relevant, Plaintiff is and was a customer of Robinhood and was and is a user of the Robinhood app (as defined herein below.)

5.      Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. Robinhood Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

2

6.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

7.     The above-named corporate defendants herein referred to collectively as "Robinhood."

8.     Hereinafter, Defendants Robinhood, any other named Defendants herein, and DOES 1 through 50, inclusive, will sometimes collectively be referred to as the "Defendants."

9.     Plaintiff is informed and believes, and thereon alleges that Defendants are the alter egos of each other and, therefore, are each liable for the acts of the other alleged in this complaint as their alter ego.  Plaintiff is informed and believes that recognition of the privilege of separate existence would promote injustice because said Defendants, and each of them, in bad faith dominated and controlled each said Defendant as follows:

(a)     Defendants commingled funds and other assets of each other for their own convenience and to assist in evading obligations;

(b)     Defendants purported to, and did, work through each other during the negotiations and performance, and interpretation, of the contracts and services set forth herein;

(c)     Defendants used each other as mere shells, instrumentalities and/or conduits for their own actions and individually, and/or negotiated the terms of the subject contracts and/or individually changed and/or breached the contracts for their own benefits and/or diverted funds, customers and other assets of each other to other than corporate uses and/or to defraud Plaintiff and others;

(d)     Defendants treated the assets of each other as their own;

(e)     Defendants failed to maintain minutes and/or adequate corporate records and/or failed to maintain other corporate formalities; and/or,

(f)     Other representations, acts or omissions subject to proof.

10.     Plaintiff is informed and believes, and thereon alleges, that Defendants operate their businesses through a number of entities and/or corporations, including the Defendants named herein.  Plaintiff is informed and believes that these Defendants use these known and unknown entities as improper liability shields and such entities are the alter egos of each other.  Plaintiff is

3

**COMPLAINT**

further informed and believes, and thereon alleges, that during the incidents alleged herein, all Defendants were aware that the wrongful acts would be committed, as set forth herein, planned them together and agreed with and intended that the wrongful acts be committed against Plaintiff and Plaintiff's interests and acted in concert to carry out the acts as set forth herein.

11.     In addition to the named Defendants herein, Plaintiff is ignorant of the true names and capacities of these other Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by these fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes that at all times mentioned in this Complaint, each of the named Defendants sued herein as DOES 1 through 50, inclusive, was the principal, employer, agent, servant, employee, representative, parent company, joint venturer, alter ego or was otherwise related to and/or associated with the named herein as DOES 1 through 50, inclusive, and in doing the acts alleged in this Complaint was acting within the course and scope of that relationship, with the knowledge, consent, and approval of the individual Defendants, and/or each of the other Defendants sued herein as DOES 1 through 50, inclusive.

## **GENERAL ALLEGATIONS**

12.     In summary, Defendants have targeted primarily Vietnamese speaking individuals living in California and elsewhere, to lure them into investing into, among other things, two fraudulent investments: a purported fund that traded stocks and options, and the chance to have Nguyen personally manage a client's brokerage accounts.

13.     Robinhood is an online brokerage firm that enables its customers to enter into securities transactions (as defined by the Securities and Exchange Act of 1934) and make trades through the Robinhood's computer systems and by using its web-based application (or "app.") Robinhood permits young or inexperienced customers to purchase and sell securities, including futures contracts such as Call or Put options. The Robinhood further claims over 10 million users use its app.

///

14.     Because of its marketing and advertising directed to younger audiences and inexperienced potential customers, Robinhood has experienced rapid growth in its businesses since it is a relatively new online brokerage firm. In 2019, Robinhood successfully raised $323 million in funding at a $7.6 billion valuation.

15.     One of those investors in Robinhood, upon information and belief, is Citadel which is a hedge fund that at all times relevant held a short-position in various stocks and derivatives thereof.

16.     On or about March 23, 2016, Robinhood's official Twitter account stated: "Let the people trade" but on January 28, 2021 Robinson has used its back-end control of its computer systems, trading platform, and its app to selectively block access to transaction or trade services for, thus far, Blackberry (NASDAQ: BB), AMC Theatres (NASDAQ: AMC), and Gamestop (NASDAQ: GME), by millions of its own customers who are unable to open, close, or purchase or sell those stocks or derivatives thereof.

17.     Starting sometime in or about mid-January, 2021 and after, stock prices for Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), and Blackberry (NASDAQ: BB) began to experience unusual activity due to social media attention surrounding "short selling" activity in at least GME.

18.     At that time, Robinhood did not restrict or interfere with its customers or the retail markets in connection with Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), and Blackberry (NASDAQ: BB).

19.     On or about January 27, 2021, Robinhood was publicly criticized in various news publication as one source of trouble in volatility of stock prices Gamestop (NASDAQ:14 GME), AMC Theatres (NASDAQ: AMC), and Blackberry (NASDAQ: BB), and that Robinhood's participation in the securities exchange markets garnered controversy because of its customer based composition of mostly younger, inexperienced, and easily influenced retail investors.

20.     In an effort to allay criticisms and negative publicity surrounding its business operations, on January 27-28, 2021, Robinhood decided to and did engage in unfair and improper

5

deprivation of computer systems, transaction/trading platform, and services to its customers by disabling the "buy" button on its app; and, Robinhood restricted, limited, or conditioned their ability to transact or trade, abruptly, purposefully, willfully, and knowing or having reason to know that the stock prices for Gamestop (NASDAQ: GME), AMC Theatres (NASDAQ: AMC), Blackberry (NASDAQ: BB), and other securities, would be manipulated and would impact the open market as a result, thus causing harm to its customers, the open market, its fellow broker/dealers and firms, as well as issuers of securities ("Selective Market Manipulation").

21.     Upon information and belief, Robinhood's actions were done purposefully and knowingly to manipulate, or with reason to know, that its customers would be harmed and without employing any reasonable protections for its retail investor customers affected, even Robinhood knew them to be typically younger or inexperienced and poorer than institutional investors and Robinhood's backers, who were typically rich or wealthy.

22.     Since Robinhood decided to and did engage in the Selective Market Manipulation as alleged herein, the stock prices and derivative market prices for Gamestop (NASDAQ:GME), AMC Theatres (NASDAQ: AMC), Blackberry (NASDAQ: BB), and any others treated the same way on its platform, have been in turmoil, gaining and losing 30-50% or more intraday and Robinhood customers and retail investors, such as Plaintiff and those similarly situated, are not freely allowed to either purchase, sell, or trade, their stocks, options, or otherwise open or close positions in derivatives at all on January 28, 2021 and after (as of the date of this complaint), in an open market free from a manipulated stock price in those stocks and derivatives.

23.     Though Robinhood advertises and market's itself and its entities attempt to build upon the old English folklore hero, the Robin the "Hood" or Robin of Lockley, who was known for stealing from the rich to give to the poor, Robinhood and its app have ironically instead stolen from its poor customers to give to the rich.

24.     The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 18 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it

receives promptly and fully." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Robinhood has breached these, among other, obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

25.    Also, pursuant to 15 USC § 78i, (i) Limitations on practices that affect market volatility. It shall be unlawful for any person, by the use of the mails or any means or instrumentality of interstate commerce or of any facility of any national securities exchange, to use or employ any act or practice in connection with the purchase or sale of any equity security in contravention of such rules or regulations as the Commission may adopt, consistent with the public interest, the protection of investors, and the maintenance of fair and orderly markets—(1) to prescribe means reasonably designed to prevent manipulation of price levels of the equity securities market or a substantial segment thereof; and (2) to prohibit or constrain, during periods of extraordinary market volatility, any trading practice in connection with the purchase or sale of equity securities that the Commission determines (A) has previously contributed significantly to extraordinary levels of volatility that have threatened the maintenance of fair and orderly markets; and (B) is reasonably certain to engender such levels of volatility if not prohibited or constrained.

26.    In adopting rules under paragraph (2), the Commission shall, consistent with the purposes of this subsection, minimize the impact on the normal operations of the market and a natural person's freedom to buy or sell any equity security.

27.    As alleged herein, the Selective Market Manipulation by Robinhood is actionable pursuant to 15 USC § 78i(f) and 18 USC §1030 (among other laws, statutes, regulations, and causes of action) and Robinhood, upon information and belief, does and shall continue to engage in the same conduct with other securities to the detriment and harm of Plaintiff, and those similarly situated.

28.    Upon information and belief, Robinhood engaging in such conduct and violations as alleged herein including the Selective Market Manipulation, knowing and having     reasonable basis for knowing that its conduct is manipulation of the free open markets and in direct harm to

its younger and inexperienced customers and users.

**Plaintiff's Experience**

29.     On or about January 29th, 2021 in connection with Defendants' decision to sell Plaintiff's calls in Gamestop (NASDAQ: GME) without authorization, consult and/or notice. Consequently, Defendants deprived Plaintiff of the monies that would have been realized and the corresponding profits ("GME Transaction"). Defendants did so to protect hedge fund short positions in the open-market by Defendants' manipulation.  Attached hereto as Exhibit 1 is a true and correct copy of the screenshot of the GME Transaction.

30.     Upon information and belief, there were no computer equipment failures, disruptions, or "glitches" that caused Robinhood to disable the "buy" button, restrict, limit, or deny access to its transaction/trading platform and app, and instead Robinhood deliberately, willfully, and intentionally, used internal controls in its app and computer systems to control the purchase and sale of, transactions in, orders of, and trading in a regulated securities market, to a beholden customer, that Robinhood engaged in without notice to them, knowing and/or having reason to know such actions was market manipulation; and what Robinhood's directors, principals, executives, and/or owners or investors, knew or should have known was market manipulation and misconduct. Indeed, Robinhood knew it was "gaming" the open markets by controlling the inflow of purchasing and leaving its customers to either sell or hold, while Robinhood violated numerous obligations and duties of trust and confidence that its young and inexperienced customer investors and users, such as Plaintiff and those similarly situated, bestowed upon it as a registered and licensed securities broker and trader, and as it marketed itself as "champion" for the poor.

31.     Defendants' wrongdoing has caused Plaintiff to suffer damages in excess of $126,500.

**FIRST CAUSE OF ACTION**

**[FRAUD/CONCEALMENT [SEE, E.G. CALIFORNIA CIVIL CODE §§ 1572, 1709, AND 1710; AND/OR VIOLATION OF 15 USC § 78i - AGAINST ALL DEFENDANTS]**

32.     Plaintiff repeats, realleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

8

**COMPLAINT**

33.     Defendants, and each of them, as alleged, committed fraud and/or concealment [see, e.g. California Civil Code §§ 1572, 1709, and 1710]; and/or violated 15 USC § 78i (a), which provides: It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—…(2)     To effect, alone or with 1 or more other persons, a series of transactions in any security registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others...To effect either alone or with one or more other persons any series of transactions for the purchase and/or sale of any security other than a government security for the purpose of pegging, fixing, or stabilizing the price of such security in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

34.     In addition, as alleged, Defendants, and each of them, violated 15 USC § 78i(d), which provides: It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange to effect, alone or with one or more other persons, a manipulative short sale of any security. The Commission shall issue such other rules as are necessary or appropriate to ensure that the appropriate enforcement options and remedies are available for violations of this subsection in the public interest or for the protection of investors.

35.     Furthermore, pursuant to 15 USC § 78i(f), Any person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction. In any

9

such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant. Every person who becomes liable to make any payment under this subsection may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment. No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

36.    As a proximate and legal result of Defendants' wrongful conduct, and each of them, and their violations, Plaintiff, and those similarly situated, were injured and are entitled to damages in excess of $126,500, including, without limit, general and special damages, and attorneys' fees and costs of suit.

37.    The conduct of Defendants, and each of them, was willful, wanton, and done with malice, oppression, and fraud, with such conscious disregard of the rights of Plaintiff, and those similarly situated, and knowing that they are young and inexperienced investors susceptible to substantial injury and financial harm, which Defendants and each of them nevertheless abused and manipulated the Robinhood app to disable vital and important features, knowing such conduct would injure Plaintiff, those similarly situated, and the general public.

**SECOND CAUSE OF ACTION**

**[FRAUD/CONCEALMENT [SEE, E.G. CALIFORNIA CIVIL CODE §§ 1572, 1709, AND 1710; AND/OR VIOLATION OF 18 USC § 1030(a) AGAINST ALL DEFENDANTS]**

38.    Plaintiff repeats, realleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

39.    Defendants, and each of them, as alleged, committed fraud and/or concealment [see, e.g. California Civil Code §§ 1572, 1709, and 1710]; and/or violated 18 USC § 1030 (a), which provides: Whoever—(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to a protected Computer, and/or other damage to Plaintiff and others.

**COMPLAINT**

40. Pursuant to 18 USC § 1030 (g), Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

41. As a proximate and legal result of Defendants, and each of them, and their violations, Plaintiff, and those similarly situated, were injured and are entitled to economic damages for violation of subclause (l) of subsection (c)(4)(A)(I).

42. As a proximate and legal result of Defendants, and each of them, and their violations, Plaintiff, and those similarly situated, are entitled to a preliminary and permanent injunction restraining any further and future violations.

43. As a proximate and legal result of Defendants' wrongful conduct, and each of them, and their violations, Plaintiff, and those similarly situated, were injured and are entitled to damages in excess of $126,500, including, without limit, general and special damages, and attorneys' fees and costs of suit.

44. The conduct of Defendants, and each of them, was willful, wanton, and done with malice, oppression, and fraud, with such conscious disregard of the rights of Plaintiff, and those similarly situated, and knowing that they are young and inexperienced investors susceptible to substantial injury and financial harm, which Defendants and each of them nevertheless abused and manipulated the Robinhood app to disable vital and important features, knowing such conduct would injure Plaintiff, those similarly situated, and the general public.

## THIRD CAUSE OF ACTION

## [NEGLIGENT MISREPRESENTATION - AGAINST ALL DEFENDANTS]

45. Plaintiff repeats, realleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

46. In the alternative, Plaintiff alleges on information and belief that when Defendants made the aforementioned representations of material fact, said representations were made by Defendants with no reasonable grounds for believing that such misrepresentations were true. Defendants made said representations with the intent to induce Plaintiff to take the actions set

11

forth herein.

47.     As a proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered damages in excess of $126,500 plus interest accruing at the rate of 10% per month until the full balance due and owing is paid.

48.     Plaintiff is informed and believes that the unlawful acts of Defendants, and their agents, servants, co-conspirators and employees, as alleged herein, were done by Defendants recklessly and in conscious disregard of Plaintiff's property and legal rights.  In order to punish Defendants, and to deter such conduct in the future, Plaintiff therefore is entitled to punitive damages in an amount according to proof at time of trial.

## FOURTH CAUSE OF ACTION

## [VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 [AND/OR FRAUD/CONCEALMENT] AGAINST ALL DEFENDANTS]

49.     Plaintiff repeats, realleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

50.     Defendants, and each of them, as alleged, committed fraud and/or concealment [see, e.g. California Civil Code §§ 1572, 1709, and 1710]; and/or engaged in conduct as alleged herein which constitutes deceptive and unfair business practices in violation of Business & Professions Code §17200, including, without limit, by doing such things as (a) Defendants' decision to sell Plaintiff's calls regarding Gamestop (NASDAQ: GME) without authorization, consult and/or notice; (b) employing the Selective Market Manipulation, (c) failing to notify Plaintiff, and those similarly situated, with sufficient advance notice thereof; and/or (d) engaging in (a), (b), and (c) of this paragraph, in the benefit of Citadel (its investor) and to the detriment of Plaintiff and those similarly situated.

51.     Defendants, and each of them, had actual and constructive knowledge of the conduct alleged herein, and had reasonable time to cure, but failed or refused to do so, nor do  they  intend to do so. Unless Defendants, and each of them, are enjoined from engaging in such manners of business practices, they will continue to do so to the detriment and injury of Plaintiff and those

12

similarly situated, and the general public.

52.     As a result of the conduct described above, Defendants, and each of them, have been and will be unjustly enriched at the expense of Plaintiff, those similarly situated, in an amount that is unaccounted for, and which must be ascertained and restored to Plaintiff and to others.

53.     As a direct and proximate result of Defendants, and each of them, their conduct and unlawful business practices, as alleged, Plaintiff and those similarly situated suffered actual, general, and special damages in an amount to be proven at trial.

54.     Pursuant to Business & Professions Code §§ 17200-17209, Plaintiff and those similarly situated members of the Class seek an order by this Court disgorging Defendants, and each of them, of their ill-gotten gains, and awarding Plaintiff and the general public, full restitution of all fees, rents, costs, deposits, profits, benefits, and/or monies wrongfully retained/acquired by Defendants and each of them, by means of such acts of unfair business practices and competition, and interest and attorneys' fees pursuant to, inter alia, Business & Professions § 17200 et. seq., per § 17087, so as to restore any and all monies to Plaintiff and the general public, which were acquired and obtained by means of such unfair business practices and competition, and which ill-gotten gains are still retained by Defendants and each of them, their affiliates or related entities. Plaintiff and the general public, additionally request that such funds be impounded or a constructive trust imposed by the Court or that an asset freeze or trust be imposed upon such revenues, fees, rents, deposits, and profits to avoid dissipation or fraudulent transfers or concealment of such monies by any or all of the Defendants and each of them. Plaintiff also requests the Court to order an audit and accounting of all monies collected by Defendants and each of them, their affiliates or related entities, during the Settlement Class Period. Plaintiff and members of the Class, and the general public may be irreparably harmed or denied an effective and complete remedy if such orders are not granted.

55.     Pursuant to Business & Professions Code §§ 17200-17209, Plaintiff seeks an order by this Court ordering Defendants and each of them, to change their practices such that Robinhood is prohibited from disabling one or more of its transaction or trade features on its app unless

13

otherwise ordered to do so by a government agency or court of competent jurisdiction, and restore all such functions forthwith.

56.     As a proximate and legal result of Defendants' wrongful conduct, and each of them, and their violations, Plaintiff, and those similarly situated, were injured and are entitled to damages in excess of $126,500 sustained including, without limit, general and special damages, and attorneys' fees and costs of suit.

57.     The conduct of Defendants, and each of them, was willful, wanton, and done with malice, oppression, and fraud, with such conscious disregard of the rights of Plaintiff, and those similarly situated, and knowing that they are young and inexperienced investors susceptible to substantial injury and financial harm, which Defendants and each of them nevertheless abused and manipulated the Robinhood app to disable vital and important features, knowing such conduct would injure Plaintiff, those similarly situated, and the general public.

## **FIFTH CAUSE OF ACTION**

## **[NEGLIGENCE AGAINST ALL DEFENDANTS]**

58.     Plaintiff repeats, realleges and incorporates by reference herein the allegations contained in the preceding paragraphs.

59.     As a proximate and legal result of Defendants' wrongful conduct, and each of them, and their violations, Plaintiff, and those similarly situated, were injured and are entitled to damages sustained including, without limit, general and special damages, and and costs of suit.

60.     The conduct of Defendants, and each of them, was willful, wanton, and done with malice, oppression, and fraud, with such conscious disregard of the rights of Plaintiff, and those similarly situated, and knowing that they are young and inexperienced investors susceptible to substantial injury and financial harm, which Defendants and each of them nevertheless abused and manipulated the Robinhood app to disable vital and important features, knowing such conduct would injure Plaintiff, those similarly situated, and the general public.

61.     Defendants, and each of them, owed Plaintiff a duty to act prudently and use reasonable care in providing financial services and notifications, and to refrain from acting in a

14

**COMPLAINT**

manner which would foreseeably cause any harm.

62.     Defendants, and each of them, also owed a special duty of care to Plaintiff and those similarly situated, not to engage in any acts or inactions that would prioritize Robinhood's and its investors interests, in using the Robinhood app and customer base, over that of Plaintiffs, those similarly situated or that of the general public, which included to refrain from operating its trading platform unequally or by interfering with the ordinary and orderly functioning by disabling one or more "buy" or "sell" feature independently, which Defendants, and each of them, knew or should have known would cause a manipulation of the free open market.

63.     Defendants, and each of them, breached their duties by, among other things, causing Plaintiff harm as set forth above and according to proof.

64.     As a proximate and legal cause of Defendant, and each of them, and their breaches, Plaintiff, and those similarly situated, suffered general and special damages in excess of $126,500.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.      For General Damages according to proof at trial;

2.      For Special Damages according to proof at trial;

3.      For Pre-Judgment Interest permitted by law;

4.      For Restitution of all amounts wrongfully retained by Defendants and each of them, their affiliates or related entities, including without limit, any premium fees, initiation fees, if applicable, and/or the pro-rata amounts thereof;

5.      For Disgorgement of all their ill-gotten gains and amounts, and reasonable dollar value thereof, wrongfully obtained by Defendants and each of them, including without limit, fees (actually paid or soft-dollar benefits), commissions (inside and outside), interest, profits, proceeds, or income;

///

15

**COMPLAINT**

6.      For a Constructive Trust, that such funds be impounded or a constructive trust imposed by the court or that an asset freeze or trust be imposed upon such revenues, premiums, benefits, and profits to avoid dissipation or fraudulent transfers or concealment of such monies by any or all of the Defendants. That audit and accounting of all monies collected by Defendants and each of them, during the Settlement Class Period and be made and reported to the court and Plaintiff;

7.      For a Preliminary and Permanent Injunction ordering Defendants and each of them, to change their practices such that Robinhood is prohibited from disabling one or more of its transaction or trade features on its app unless otherwise ordered to do so by a government agency or court of competent jurisdiction, and restore all such functions forthwith;

8.      For Civil Penalty Damages not to exceed $2,500.00 for each violation, per Business and Professions Code § 17206.1, all in accordance with proof at trial;

9.      For Treble Damages, per Business and Professions Code § 17082, all in accordance with proof at trial;

10.     For Attorneys' Fees per contract, statute or law;

11.     For Costs of this suit herein incurred; and,

12.     For such other and further relief as the court deems just and proper.


Dated:  5/25/21                    By: _____
                                        Paul Anthony Suppa, Esq., counsel for Plaintiff

16

COMPLAINT

Exhibit "1"

Ǥ A RESILIENT FUTURE

ACTOR & AUTHOR MATTHEW MCCONAUGHEY | REP. KATIE PORTER |
MICROSOFT'S KATHLEEN HOGAN | GREYLOCK'S REID HOFFMAN &
MORE





**Alex Rodriguez on his life and career: 'It's an imperfect story'**

**One year later: How 15 American workers are coping with the coronavirus pandemic**

**Former N** **Martina E**

SAVE AND INVEST

# Robinhood now faces roughly 90 lawsuits after GameStop trading halt—here's how customers might actually get their day in court

Published Wed, Feb 17 2021·3:04 PM EST

Megan Leonhardt
@MEGAN_LEONHARDT

SHARE   f   🐦   in   ✉

 



**The GameStop Corp. website on a laptop computer and Robinhood application on a smartphone.** Tiffany Hagler-Geard | Bloomberg | Getty Images

In the roughly three weeks since Robinhood restricted trading of certain securities, including GameStop, investors have filed more than 90 federal lawsuits generally claiming that the trading app's actions were unfair and unlawful, court records reviewed by CNBC's Make It reveal.

Yet consumer advocates and lawmakers including Sen. Elizabeth Warren, D-Mass., worry that users who have filed these suits will not get their day in court. That's because Robinhood's user agreement contains a clause that requires disputes by users to be settled in arbitration and not in the civil court system.

Most major corporations and employers, including Robinhood, have arbitration clauses in their "terms of service" agreements that require customers to litigate their

G A RESILIENT FUTURE    ACTOR & AUTHOR MATTHEW MCCONAUGHEY | REP. KATIE PORTER |
MICROSOFT'S KATHLEEN HOGAN | GREYLOCK'S REID HOFFMAN &
MORE

 

Although each case varies slightly, most of the lawsuits filed over the last few weeks are on behalf of app users who say they suffered financial setbacks and missed opportunities as a result of Robinhood and other trading platforms sharply restricting the number of shares an individual could buy of GameStop, and other stocks such as AMC and Nokia, starting on Jan. 28.

GameStop's stock, which was trading at about $4 per share six months ago, hit a high of $483 per share on Jan. 28 spurred by its promotion on the Reddit group WallStreetBets and others on social media.

Robinhood's actions were undertaken "purposefully and knowingly to manipulate the market for the benefit of people and financial institutions who were not Robinhood customers," one early class action lawsuit in Massachusetts alleges.

The number of federal lawsuits alone filed in the past month are nearly double the roughly 50 suits filed against Robinhood in the 12 months before the trading halt. And already, several thousand people have signed up with DoNotPay.com to automatically join a class action lawsuit against Robinhood.

Robinhood, in a statement, said the restrictions were due to the amount it's required to deposit with trading clearinghouses, which had reached hundreds of millions of dollars because of the volatility of the share prices and trading volumes.

At this point, it's too early to know whether these lawsuits will prove to be a nuisance or a real threat to Robinhood, which primarily operates as a broker-dealer. The company declined to comment on Friday regarding the lawsuits the company is currently facing.

"What is most out of the ordinary about this whole fiasco is that Robinhood started to prohibit trading without any regulatory action requiring a prohibition," says Adam Gana, managing partner of Gana Weinstein LLP and a lawyer who specializes in securities litigation and arbitration.

**ъ A RESILIENT FUTURE**  ACTOR & AUTHOR MATTHEW MCCONAUGHEY | REP. KATIE PORTER | MICROSOFT'S KATHLEEN HOGAN | GREYLOCK'S REID HOFFMAN & MORE    

different matter that needs to be investigated."

In addition to facing lawsuits, Robinhood is also fielding questions from lawmakers and regulators over the situation. Both the Senate and House are set to hold hearings on the matter, with Robinhood's CEO Vlad Tenev set to testify on Thursday in front of the House Financial Services committee. Regulators are also reportedly investigating the situation for potential violations related to market manipulation.

"Robinhood has a responsibility to treat its investors honestly and fairly, and provide them with access to the market under a transparent and consistent set of rules. It is deeply troubling that the company may not be doing so," Senator Warren said earlier this month.

## Will Robinhood investors have to deal with forced arbitration?

Mandatory arbitration, sometimes referred to as forced arbitration, is a form of dispute resolution that generally requires consumers to handle any legal issues outside the court system. Instead of going to court, disputes are heard and ruled on before an arbitrator or a panel of arbitrators.

Proponents of arbitration say that it's typically faster and cheaper than having your case work through the court system. But opponents argue that this system can be unfair to consumers and that the arbitration system can hide systemic problems because cases are usually not public and many times require parties to sign non-disclosure agreements.

Robinhood's arbitration provision reads: "This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows: (1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed…"